We'll hear the next case, Henderson v. Berryhill. Amy C. Chambers Good morning, Your Honors. My name is Amy C. Chambers, and I'm here on behalf of Dolores Henderson, a felon. This is an appeal for a Title II and Title XVI denial based on administrative law judge errors and appeals counsel errors. Ms. Henderson, we argue that the residual functional capacity found by the administrative law judge was unsupported by substantial evidence and that the—I'll call it the ALJ—improperly evaluated opinions and used improper selective reading of opinions and evidence. The ALJ failed to properly evaluate Ms. Henderson's credibility. Her testimony and her reports are consistent with the objective medical evidence, and the appeals counsel improperly disallowed new and material evidence as Ms. Henderson's knee conditions were—the new and material evidence supports that her knee conditions were worse than previously found by the ALJ and that her knee condition as of the MRIs in January of 2015 warranted surgery. So, do you have any questions? So, specifically, the ALJ— On the residual functional capacity, isn't there evidence in the record, namely the opinions from Dr. Liu and Dr. Kowalski, who provides evidence to support the ALJ's finding? Well, what I would say to that is those opinions were provided in 2013, and just for your purposes or our purposes here. The date last insured for Ms. Henderson for Title II purposes is December 30, 2014. The ALJ could find disability any time between, you know, his decision in June 2015. In 2013, she had lumbar surgery. There was an opinion by Dr. Liu who found mild to moderate limitations in walking and a number of other things. You know, respectfully, Dr. Liu didn't have any MRIs. She didn't have imaging from January of 2015. She didn't have imaging from March of 2014. She didn't have imaging from November of 2014. But besides that, the exam showed that she was limited by pain and things like that. Dr. Kowalski's opinion, he's a private doctor. He says you can do light duty, right? There's no bending or stooping. The ALJ... He was a treating orthopedic surgeon for her lumbar. One can quarrel with their opinions, but don't they constitute substantial evidence in support of the ALJ's opinion? What I would say about Dr. Kowalski's opinion as a private doctor, Dr. Kowalski nowhere indicated that he considered light duty to be the equivalent of light duty in what we define in social security rules. So I would say that. But besides that, if you're looking at his 2013 opinion, he says that she should do no capacity. Is there a limitation for no bending, even though the ALJ provided great weight, accorded great weight to Dr. Kowalski? Her conditions are degenerative, so they worsened. So I would say that that's ambiguous and that he can't equate Dr. Kowalski's opinion with light work. Dr. Liu's opinion, based on the one-time exam, that doesn't reflect the record as a whole, and her conditions worsened. Dr. Honeysi's opinion in July of 2014, I would think, would constitute substantial evidence as well. He was a treating doctor, and he had available to him other medical records. He had an imaging, I believe. He would have had Dr. Kowalski's notes. He also would have had an MRI or imaging from March of 2014. And besides that, Dr. Kowalski did not treat plaintiff, I'm sorry, Ms. Henderson, for knee conditions. So that's what I would say to that. All right. Thank you. You can save that time for rebuttal. Okay. May it please the Court. My name is Prashant Thomasker. I represent the Commissioner of Social Security. Your Honors, the Commissioner's position is that the only proper issue before this involves the new evidence that was submitted. One clarification I would like to make with respect to this new evidence is appellant discusses this new evidence with respect to the Appeals Council. This evidence was never presented to the Appeals Council. This evidence was, in fact, presented to the District Court. The Appeals Council's decision is dated September, I believe, 20th, 2016 or September 21st, 2016. The first piece of new evidence was dated that same day. The remaining evidence postdates the Appeals Council's decision. So this evidence was never before the agency. With that being said, with respect to any RFC issues, as noted, the Commissioner's position is that they were not raised at the District Court level. The only issue raised at the District Court level with respect to RFC was whether Dr. Kowalski's limitations. Here on appeal, appellant has shifted positions and now is effectively arguing that Dr. Kowalski, that the ALJ erred by giving too much weight to Dr. Kowalski, by relying on Dr. Kowalski's opinion too much, which is, in fact, a completely different legal theory, an entirely different opinion, an entirely different issue, excuse me. And additionally, the, she has added, the appellant has added credibility arguments and arguments with respect to other physicians. With respect to the new evidence that I'd like to discuss, it was, it's appellant's burden to prove a more restrictive RFC from this evidence. This evidence postdates the ALJ's decision by 15 to 18 months. There's nothing in this evidence that indicates that any greater restriction in the RFC would have been found based on this evidence. Plaintiff had, excuse me, appellant had a degenerative chronic condition. The fact that 15 to 18 months later the condition worsened is not necessarily surprising and doesn't give any insight into what the condition was 15 to 18 months prior. Additionally, the appellant has a remedy for having this evidence addressed by the commissioner, which is to file a new application. And then, and although it's not on the record, this, the appellant has, in fact, filed a new application and received a favorable decision from the commissioner contemporaneous to this evidence, the new evidence that was presented. What do you mean contemporaneous? Finding her eligible for benefits as of. Based on the new evidence. Based on the new evidence and evidence submitted afterwards. So starting approximately around the time of the new evidence. So accordingly, there's really no, there's really no reason for remand to be warranted in this instance because the proper mechanisms are available for the appellant. I can, I can discuss more, but if your honors have any questions, I will. Thank you. Um, I would just like. So is that right? Your client was granted benefits based on the new evidence? Um. Or that period going? That would have, I'm assuming that would have been only for title 16 because title two, her date last insured is December 30th of 2014. And so that's why this is, um, this, this is determinative and that's why it's significant. Something like the MRI that's less than less than 11 days after her date last insured that shows degenerative knee conditions that are, that were severe enough that she ended up getting surgery at some point. Um, and that she told the, um, the judge at hearing that she wasn't ready for surgery. Um, not that it wasn't warranted. Um, so Dr. Kowalski did not, did not, um, like I said, evaluate her knee conditions. Um, he, he did not have access to that MRI. He did not have access to November 2014 MRI, or I'm sorry, x-rays. Um, but besides that, um, I would say that another attorney had done the, um, the original brief, um, to the Western District in New York. Um, there are credibility arguments. There's selective reading of evidence and opinions in the record. And so I respectfully have not, we haven't waived any, um, arguments. And the brief that I have, um, it's, it's not different because, um, again, um, the argument is that there, there was a selective reading of evidence and opinion improper. Um, as far as, so, and just to be clear, um, Ms. Henderson's reporting has been consistent. In 2013, she was reporting she had limitations with walking, sitting, standing, um, and she needed short breaks. In 2014, she had the same problems and also she had, she, that worsened. Um, so she was, she was, and she testified to the judge that she can walk for 15 minutes, she can sit for 15 minutes, she can stand for 15 minutes, she can sit for 15 minutes, and then she has to rest for 15 minutes, either reclining or, um, or laying down. That is consistent with the medical evidence. It's consistent with the opinions and what's changed from 2013 to 2014. And because her date last insured is December 2030, or is it December 30th, 2014, um, it's significantly harmful that the judge, um, took it upon himself to say the MRI and the x-rays from November 2014 and January 2015 weren't consistent with her testimony, weren't consistent with Dr. Honose from 2014. Thank you. Okay, thank you. We'll, uh, reserve the session.